IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TIMOTHY C. ROTE,                                         3:16-CV-1434-PK

                                                          FINDINGS AND
                                                          RECOMMENDATION

                    Plaintiff,

v.

LOT SOLUTIONS, INC., and DOES 1
THROUGH 5,

                    Defendants.
_____

PAPAK, Magistrate Judge:

  Plaintiff *pro se* Timothy C. Rote (a citizen of Oregon) filed this action against defendant

Lot Solutions, Inc. ("Lot") (a corporation organized under Georgia law[1] and headquartered in

Florida), and five Doe defendants (each alleged to be a citizen of a state other than Oregon) on

_____

   [1] Rote alleges, apparently inaccurately, that Lot is organized under Florida law.

Page 1 - FINDINGS AND RECOMMENDATION

July 15, 2016. By and through his complaint, Rote alleges that at all material times he was a "secured creditor" and shareholder of Northwest Direct Marketing, Inc. ("NDM"), that NDM and Lot were parties to an agreement pursuant to which NDM agreed to provide Lot with "inbound and outbound telemarketing services" and Lot agreed to pay NDM for those services, that Lot breached its payment obligations to NDM, and that Rote "has foreclosed on the Accounts Receivable of NDM for the purpose of collecting said receivables and paying the secured lenders . . . their balances owed and to return the balance for the benefit of the unsecured creditors." Arising out of the foregoing, Rote alleges Lot's liability to him under Oregon law for breach of its contract with NDM. Rote seeks award of compensatory damages in the amount of $463,701.90 plus interest. This court may properly exercise diversity jurisdiction over Rote's cause of action pursuant to 28 U.S.C. § 1332, based on the complete diversity of the parties and the amount in controversy.

Now before the court is Lot's motion (#20) to dismiss Rote's cause of action for failure to state a claim and/or for failure to join a necessary party, and in the alternative to transfer this action to the state of Georgia pursuant to the forum-selection clause of the agreement between Lot and NDM. I have considered the motion and all of the pleadings and papers on file. For the reasons set forth below, Lot's motion to dismiss should be granted in part and denied in part, Rote's claim should be dismissed without prejudice, and Lot's alternative motion to transfer should be denied. I recommend that Rote be granted a period of thirty days within which to amend his pleading to cure the defects identified herein, and that the court enter judgment in connection with such dismissal only in the event of his failure to do so within the specified period.

Page 2 - FINDINGS AND RECOMMENDATION

## LEGAL STANDARDS

### I.    Failure to State a Claim

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint

must contain more than a "formulaic recitation of the elements of a cause of action;" specifically,

it must contain factual allegations sufficient to "raise a right to relief above the speculative level."

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To raise a right to relief above the

speculative level, "[t]he pleading must contain something more . . . than . . . a statement of facts

that merely creates a suspicion [of] a legally cognizable right of action." *Id.*, *quoting* 5 C. Wright

& A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004); *see also* Fed. R.

Civ. P. 8(a).  Instead, the plaintiff must plead affirmative factual content, as opposed to any

merely conclusory recitation that the elements of a claim have been satisfied, that "allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  "In sum, for a complaint to

survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from

that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v.*

*United States Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009), *citing Iqbal*, 129 S. Ct. at 1949.

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained

in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial

notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).  In considering a motion to

dismiss, this court accepts all of the allegations in the complaint as true and construes them in the

light most favorable to the plaintiff. *See Kahle v. Gonzales*, 474 F.3d 665, 667 (9th Cir. 2007).

Moreover, the court "presume[s] that general allegations embrace those specific facts that are

necessary to support the claim." *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 256 (1994),

*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The court need not, however,

accept legal conclusions "cast in the form of factual allegations." *Western Mining Council v.

Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## II.    Failure to Join a Necessary Party

A party may move to dismiss a complaint for "failure to join a party under Rule 19." Fed.

R. Civ. P. 12(b)(7). The courts of the Ninth Circuit follow a three-step inquiry in considering

dismissal pursuant to Rule 12(b)(7). *See Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672

F.3d 1176, 1179 (9th Cir. 2012). That inquiry "is a practical, fact-specific one, designed to avoid

the harsh results of rigid application." *Dawavendewa v. Salt River Project Agr. Imp. & Power

Dist.*, 276 F.3d 1150, 1154 (9th Cir. 2002). The court must first "determine whether a nonparty

should be joined under Rule 19(a) . . . as a person required to be joined if feasible.'" *E.E.O.C. v.

Peabody W. Coal Co.*, 610 F.3d 1070, 1078 (9th Cir. 2010). If so, the court next determines

"whether it is feasible to order that the absentee be joined." *Id.* (internal quotation marks

omitted). Finally, "if joinder is not feasible, the court must determine at the third stage whether

the case can proceed without the absentee or whether the action must be dismissed." *Id.* (internal

quotation marks omitted). "Rule 19 is designed to protect the interests of absent parties, as well

as those ordered before the court, from multiple litigation, inconsistent judicial determinations or

the impairment of interests or rights." *CP Nat'l Corp. v. Bonneville Power Admin.*, 928 F.2d

905, 911 (9th Cir. 1991).

## III.    Transfer

"[F]or the convenience of parties and witnesses, in the interest of justice, a district court

may transfer any civil action to any other district or division where it might have been brought."

28 U.S.C. § 1404(a).

> A motion to transfer venue under § 1404(a) requires the court to weigh multiple
> factors in its determination whether transfer is appropriate in a particular case.
> For example, the court may consider: (1) the location where the relevant
> agreements were negotiated and executed, (2) the state that is most familiar with
> the governing law, (3) the plaintiff's choice of forum, (4) the respective parties'
> contacts with the forum, (5) the contacts relating to the plaintiff's cause of action
> in the chosen forum, (6) the differences in the costs of litigation in the two
> forums, (7) the availability of compulsory process to compel attendance of
> unwilling non-party witnesses, and (8) the ease of access to sources of proof.
> Additionally, the presence of a forum selection clause is a "significant factor" in
> the court's § 1404(a) analysis.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000) (footnotes omitted). The

defendant bears the burden of establishing the greater appropriateness of the transferee forum.

*See id.* Courts afford a degree of deference to a plaintiff's choice of her home forum. *See, e.g.*,

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981).

## FACTUAL BACKGROUND

### I.     The Parties

Plaintiff Rote is an individual citizen of Oregon. At all material times, Rote was the

president, secretary, and registered agent of NDM. At all material times, NDM was organized

under Oregon law and headquartered in Oregon.

Defendant Lot is a Georgia corporation headquartered in Florida. Although Rote alleges

that the Doe defendants are citizens of states other than Oregon, he does not otherwise refer to

them in his complaint, allege any conduct attributable to them, or suggest that any of them played

any direct or indirect role in the complained-of conduct.

II.     **Rote's Allegations Regarding the Parties' Dispute[2]**

On February 17, 2008, Lot and NDM "entered into a contract for inbound and outbound telemarketing services. Complaint, ¶ 9. NDM provided such services to Lot from a call center located in Beaverton, Oregon. *See id*, ¶ 10. In approximately October 2011, Lot directed NDM to cease providing it with telemarketing services, and began relying on a business entity it had recently acquired to perform such services in-house. *See id.*, ¶¶ 12, 14. Rote advised Lot at approximately that time that pursuant to the agreement between Lot and NDM, Lot was not entitled to terminate its agreement with NDM without first complying with a contractual provision calling for gradual "ramp down of the contract volume." *Id.*, ¶ 13. Lot nevertheless ceased doing business with NDM without first gradually ramping down the volume of services it required NDM to perform. *See id.*, ¶¶ 14, 16. At some subsequent time, Rote "foreclosed on the Accounts Receivable of NDM for the purpose of collecting said receivables and paying the secured lenders, Wells Fargo and Rote, their balances owed and to return the balance for the benefit of the unsecured creditors." *Id.*, ¶ 20. It is Rote's position that, at the time Lot ceased doing business with NDM, NDM was entitled to $239,172.29 in "ramp-down" payments, and that at the time he filed this action, that amount had grown with interest to $463,701.90. *See id.*, ¶¶ 17-18.

III.    **Incorporation by Reference**

In support of its motion to dismiss, Lot offered three documents into evidence: (i) a document by and through which on July 15, 2016, Rote apparently requested that NDM be

---

[2] Except where otherwise indicated, the following recitation constitutes my construal of the allegations of Rote's complaint in the light most favorable to Rote.

reinstated as an active business entity after having been administratively dissolved effective November 19, 2015, (ii) the "Outbound Call Center Services Agreement" entered into by Lot and NDM as of February 17, 2008, and (iii) a document apparently reflecting that as of September 14, 2016, Wells Fargo Bank, N.A., Wells Fargo Equipment Finance, Inc., and Rote were on record with the Oregon Secretary of State as secured creditors of NDM. In opposition to Lot's motion, Rote in turn offered into evidence four documents: (i) a "Promissory Note" dated July 1, 2012, reflecting an extension of credit in the amount of $1,000,000 by Rote to NDM and a concurrently executed "Security Agreement" between Rote and NDM, (ii) a "Security Agreement" dated July 1, 2010, between Rote and NDM, identical to the Security Agreement dates July 1, 2012, (iii) a demand letter from Rote to Lot dated June 22, 2016, by and through which Rote made a demand for payment in the amount of $463,107.90, and (iv) an email message from Belen M. Scully-Power (identified as Associate General Counsel for Fortegra Financial) to Rote dated April 8, 2013, by and through which Scully-Power stated, in material part, "At this point, we continue to dispute that any amounts are due. We will go ahead and waive mediation."

In determining the merits of Lot's motion to dismiss, this court may appropriately consider the Outbound Call Center Services Agreement dated February 17, 2008 (the "Lot/NDM Agreement"), without construing Lot's motion as one for summary judgment, because Rote's complaint references the Lot/NDM Agreement expressly and because Rote's claim for relief arises directly out of Lot's alleged breach of that agreement. *See, e.g.*, *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Similarly, this court may

Page 7 - FINDINGS AND RECOMMENDATION

appropriately consider the Security Agreement dated July 1, 2010 (the "NDM/Rote Security

Agreement of July 1, 2010") and the Security Agreement dated July 1, 2012 (the "NDM/Rote

Security Agreement of July 1, 2012" and, collectively with the NDM/Rote Security Agreement of

July 1, 2010, the "NDM/Rote Security Agreements") because Rote's complaint expressly

references Rote's status as NDM's secured creditor and/or secured lender, and because Rote's

theory of standing to bring his claim is expressly predicated on that status and on his conduct in

foreclosing on the interest impliedly created by the NDM/Rote Security Agreements. *See*

*Daniels-Hall*, 629 F.3d at 998; *Marder*, 450 F.3d at 448; *Ritchie*, 342 F.3d at 908. By contrast,

Rote's complaint does not reference the document by and through which Rote apparently sought

reinstatement of NDM as an active business entity following its administrative dissolution, the

document apparently reflecting the status of Rote and certain third parties as secured lenders of

NDM, the demand letter of June 22, 2016, or the Scully-Power email message of April 8, 2013,

and there is no colorable argument that Rote's claim arises out of any of those documents.[3]  This

court therefore may not properly consider those documents without first construing Lot's motion

as one for summary judgment. The party's proffered documents, other than the Lot/NDM

Agreement and the NDM/Rote Security Agreements, accordingly have been and should continue

to be disregarded for purposes of determining the merits of Lot's motion to dismiss.

   The Lot/NDM Agreement provided that NDM would provide telemarketing services to

---

   [3]  With respect to the Scully-Power email message of April 8, 2013, I further note that,
although Rote appears to believe that the message establishes that Lot knowingly waived its
contractual right (discussed below) to require Rote to mediate his claim before submitting it to
litigation, there is no way to determine whether Scully-Power's reference to waiver refers to the
dispute underlying Rote's current claim, whether Scully-Power purported to waive any right on
behalf of Lot as opposed to some other entity, or whether the waiver satisfied the requirements of
enforceability.

Page 8 - FINDINGS AND RECOMMENDATION

Lot out of its own call center locations and according to specified quality standards. *See* Lot/NDM Agreement (Lot's motion (#20) to dismiss, Exh. 2), §§ 2.1, 2.2, 3.4. Lot was required to provide NDM with an advance "monthly volume commitment" for such services "for a rolling three-month period," with an acceptable margin of error of 10%, but could revise its volume commitment at any time with at least 45 days notice. *Id.*, § 4.1. The Lot/NDM Agreement was initially entered into for a period of two years, and would automatically renew for successive one-year periods unless either party provided the other with 90 days notice of its intent not to renew. *See id.*, § 7.1. The agreement provided, also, for termination for cause by either party, *see id.*, § 7.2, and for termination of convenience by either party, *see id.*, § 7.3. In the event of termination for convenience, if NDM at the time such termination was effected had in excess of one hundred employees assigned to the provision of telemarketing services on behalf of Lot (the agreement is silent as to whether such employees were required to be full-time employees or the equivalent thereof), Lot was required to ramp down the telemarketing services it had engaged NDM to perform over 90 days according to the following schedule: for the first 30 days following notice of termination of convenience, Lot was required to compensate NDM for telemarketing services at a volume equal to 75% of the pre-notification volume, for the second 30 days following notice of such termination, Lot was required to compensate NDM for telemarketing services at a volume equal to 50% of the pre-notification volume, and for the third 30 days following notice of such termination, Lot was required to compensate NDM for telemarketing services at a volume equal to 25% of the pre-notification volume. *See id.*, § 7.3. Assignments of rights under the Lot/NDM Agreement were expressly forbidden in the absence of the non-assigning party's prior written consent. *See id.*, § 17.

Page 9 - FINDINGS AND RECOMMENDATION

In the event of any dispute under the Lot/NDM Agreement, the agreement required the parties first to attempt to resolve their dispute informally, and in the event of the failure of such efforts, to appoint representatives to negotiate formal resolution of the dispute. *See id.*, § 16.1.1. In the event the parties' representatives were unsuccessful in negotiating a resolution, the agreement required the parties to submit their dispute to mediation in Jacksonville, Florida, within thirty days of such failure before seeking judicial resolution. *See id.*, § 16.1.2. The agreement expressly provided that a party's failure to comply with the foredescribed alternative dispute resolution procedures would constitute "material breach" of the agreement. *Id.*, § 16.1.3. In the event the agreement's mediation provision "d[id] not apply or c[ould] not be applied to resolve" the parties' dispute, Lot and NDM agreed that "any litigation" between Lot and NDM would "take place in the state of Georgia" and that Georgia law would govern the dispute. *Id.*, § 16.2. Lot and NDM agreed that, in connection with litigation of any dispute arising out of their agreement, each would submit to the jurisdiction of a Georgia court and would "comply with all requirements necessary to give such court jurisdiction." *Id.*

By and through the NDM/Rote Security Agreements, each of which was signed by Rote on behalf of both parties, NDM granted Rote a secured interest in "the Collateral," defined as:

> [NDM]'s tangible personal property, fixtures, leasehold improvements, trade fixtures, equipment, and other personal property described on Exhibit "A" attached hereto and made a part hereof (the **"Personal Property"**); all general intangibles relating to or arising from the Personal Property, all cash and non-cash proceeds (including insurance proceeds) of the Personal Property, all products thereof and all additions and accessions thereto, substitutions therefor, and replacements thereof.

NDM/Rote Security Agreements (Rote's opposition (#22) memorandum, Exh. 1 at 6-10, Exh. 1.1), § 1(a) (emphasis original). Exhibit "A" to the NDM/Rote Security Agreements has not been

offered into evidence.

The NDM/Rote Security Agreements granted Rote the right to take possession of the Collateral in the event of any default by NDM of any payment obligation to Rote. *See id.*, §§ 8, 9. The NDM/Rote Security Agreements contained a provision specifying that the agreements were to be "deemed to be made in the State of Maryland," that the agreements were to be interpreted, and the rights of the parties thereto determined, in accordance with Oregon law, and that NDM consented to jurisdiction in Clackamas County, Oregon, for purposes of litigating any dispute between the parties to the agreements. *See id.*, § 19.

## ANALYSIS

As noted above, Lot seeks dismissal of Rote's claim and, in the alternative, seeks transfer of Rote's action to the Northern District of Georgia. To the extent Lot seeks dismissal of Rote's claim, it does so under both Federal Civil Procedure Rule 12(b)(6) for failure to state a claim and Federal Civil Procedure Rule 12(b)(7) for failure to join a necessary party. I address the parties' arguments in connection with Lot's theories of dismissal and transfer below.

## I.    Lot's Motion to Dismiss

### A.    Dismissal for Failure to State a Claim

Lot argues, first, that because Rote was not a party to the Lot/NDM Agreement, he lacks standing to pursue his claim for its breach. I agree with Lot that, as Rote's complaint is currently pled and in light of the documents incorporated by reference therein, no grounds exist for concluding that Rote could have the requisite standing.

The question whether a plaintiff has enforceable rights under a contract goes to prudential rather than constitutional standing, and is thus appropriately addressed pursuant to Federal Civil

Procedure Rule 12(b)(6). *See Harris v. Amgen, Inc.*, 573 F.3d 728, 732 n. 3 (9th Cir. 2009); *see also Lindsey v. Starwood Hotels & Resorts Worldwide, Inc.*, 409 Fed. Appx. 77, 78 (9th Cir. 2010) (unpublished disposition). Because the Lot/NDM Agreement contains a provision specifying that it is governed by Georgia law, I turn to Georgia law to determine whether Rote has any right to seek enforcement of that agreement.[4]

Under Georgia law, it is well settled that "[t]he doctrine of privity of contract requires that only parties to a contract may bring suit to enforce it." *Scott v. Cushman & Wakefield of Ga.*, 249 Ga. App. 264, 265 (2001), *citing Decatur North Assocs., Ltd. v. Builders Glass, Inc.*, 180 Ga. App. 862, 863 (1986), Off. C. Ga. Ann. §§ 9-2-20(a); *see also Dominic v. Eurocar Classics*, 310 Ga. App. 825, 827 (2011) (same). Georgia law nevertheless recognizes certain exceptions to that general rule, including assignment of the right to enforce a contract, *see Scott*, 249 Ga. App. at 265, enforcement of a contract by an intended third-party beneficiary thereof, *see Dominic*, 310 Ga. App. at 391, *see also* Off. C. Ga. Ann. §§ 9-2-20(b), and equitable (also characterized as "legal") and contractual subrogation, *see Cornelia Bank v. First Nat'l Bank*, 170 Ga. 747, 750-751 (1930). Here, Rote offers no allegation or argument either that NDM assigned him its rights under the Lot/NDM Agreement (or that Lot gave NDM its requisite prior written consent to such assignment), that he was the intended third-party beneficiary of the Lot/NDM Agreement, or that grounds exist for contractual subrogation of Rote to NDM's rights under the Lot/NDM Agreement; Rote argues only that he should be equitably subrogated to NDM's rights under the

---

[4] Rote expressly states that he is not pursuing his claim as a shareholder of NDM or otherwise derivatively, and expressly takes the position that if he were pursuing his claim as a derivative claim (and only if he were), it would be subject to dismissal pursuant to Federal Civil Procedure Rule 19(a)(1) for failure to join NDM as an essential party. I accept at face value Rote's stipulation that he is not pursuing his claim based on his status as an NDM shareholder.

Lot/NDM Agreement based on his status as NDM's secured creditor and on his claim that Lot owes NDM unpaid "ramp-down" payments.

As a preliminary matter in connection with Rote's theory of equitable subrogation, I note that the Collateral of NDM in which Rote has a secured interest pursuant to the NDM/Rote Security Agreements does not include NDM's interest in payments from Lot pursuant to the Lot/NDM Agreement. Rote's interest in NDM's property pursuant to the NDM/Rote Security Agreements is limited to "tangible personal property, fixtures, leasehold improvements, trade fixtures, equipment, and other personal property," plus "intangibles" that arise out of or relate to such property, plus proceeds from such property. NDM/Rote Security Agreements, § 1(a). Rote has no secured interest pursuant to the NDM/Rote Security Agreements in NDM's accounts receivable, or in proceeds arising out of services it or its employees provide to NDM's clients. As such, Rote's complaint provides no suggestion that Rote had any basis upon which to foreclose on NDM's accounts receivable, as he alleges to have done, *see* Complaint, ¶ 20, or that such foreclosure could have been undertaken pursuant to Rote's status as NDM's secured creditor.

In the absence of a formal subrogation agreement (which would give rise to so-called "contractual" subrogation), Georgia law[5] recognizes that a creditor may be subrogated to the rights of a debtor where the creditor's advancement of money to the debtor was intended to satisfy a debt that, in the event of the debtor's default, the creditor would be obligated to pay, or where the creditor had an interest that the advancement of money to the creditor was intended to

---

[5] Although the parties acknowledge that the parties' rights under the Lot/NDM Agreement are to be construed according to Georgia law, they offer argument only as to Oregon's law of subrogation.

protect. *See Graves v. Carter*, 208 Ga. 5, 6 (1951), *citing Lutes v. Warren*, 146 Ga. 641, 642 (1917) (legal or equitable subrogation arises "only in those cases where the party claiming it advanced the money to pay a debt which, in the event of default by the debtor, he would be bound to pay, or where he had some interest to protect"), *quoting Wilkins v. Gibson*, 113 Ga. 31, 47-48 (1901). Because NDM owed Lot no debt that, in the event of NDM's default, Rote would be obliged to pay, and because Rote had no interest to protect in NDM's accounts receivable, it follows that, under Georgia law, no grounds exist for Rote's subrogation to NDM's rights under the Lot/NDM Agreement.

For the foregoing reasons, I agree with Lot that Rote has failed to plead facts giving rise to any right to seek enforcement of the Lot/NDM Agreement. Because that defect in Rote's pleading could conceivably be cured by amendment, Rote's claim is subject to dismissal without prejudice in consequence of his failure to plead facts giving rise to a personal right to seek enforcement of the Lot/NDM Agreement.

Lot argues, second, that even if Rote had standing to pursue his breach of contract claim, his allegations are insufficient to plead Lot's breach of any provision of the Lot/NDM Agreement. Again, I agree with Lot's argument.

Rote's theory of breach is that Lot violated Section 7.3 of the Lot/NDM Agreement following its termination of convenience of the parties' business relationship by failing to "ramp down" over a 90-day period its demand for compensable services from NDM. As noted above, Lot's obligation under Section 7.3 to "ramp down" the volume of contractual services was conditioned on Rote's dedication of more than 100 employees to services on behalf of Lot prior to the termination of convenience. *See Lot/NDM Agreement*, § 7.3. Nowhere in Rote's

Page 14 - FINDINGS AND RECOMMENDATION

complaint or in any of the documents incorporated by reference therein is there any suggestion that the requisite number of NDM employees were dedicated to performance of services on behalf of Lot. It follows that Rote's allegations are insufficient to state a claim for breach. *See Twombly*, 550 U.S. at 555. Again, because the insufficiency of Rote's allegations to state a claim for breach of Section 7.3 is subject to cure by amendment, Rote's claim is subject to dismissal without prejudice in consequence of such insufficiency.

Third and finally, Lot argues that even if Rote had standing to pursue his breach of contract claim, his allegations are insufficient to state an actionable breach of contract claim against Lot arising out of the Lot/NDM Agreement because Rote has not alleged that he satisfied the mediation requirements of Section 16.1.2 thereof, a contractual condition precedent to civil litigation to enforce the parties' agreement. I disagree with this argument, because Rote is not a party to the Lot/NDM Agreement and has not agreed to be bound by it. To be sure, if NDM sought to bring a breach of contract action against Lot, its failure to plead satisfaction of the Section 16.1.2 mediation obligation could merit dismissal pursuant to Rule 12(b)(6) (as would Rote's failure to plead such satisfaction in this action if Rote were in fact subrogated to NDM's rights under the Lot/NDM Agreement), but where, as here, Rote brings his breach of contract claim in his own right and without benefit of subrogation, his failure to plead satisfaction of his obligations under Section 16.1.2 is immaterial.[6]

---

[6] Notwithstanding the foregoing, in the event Rote were successful in amending his claim such that he could appropriately proceed on a theory of equitable subrogation, I agree with Lot that his failure to satisfy the Lot/NDM Agreement's mediation requirements prior to bringing this action would defeat his claim of breach as a matter of law. *See Houseboat Store, LLC v. Chris-Craft Corp.*, 302 Ga. App. 795, 799 (2010) (contractual provisions providing that mediation is a condition precedent to initiating judicial proceedings are enforceable under Georgia law), *citing Sagon Motorhomes Inc. v. Southtrust Bank of Ga.*, 225 Ga. App. 348, 350

Page 15 - FINDINGS AND RECOMMENDATION

**B.      Dismissal for Failure to Join a Necessary Party**

Lot argues that, as one of two parties to the Lot/NDM Agreement, NDM is a necessary

party whose absence warrants dismissal pursuant to Federal Civil Procedure Rule 12(b)(7).  The

question whether NDM is a necessary party to this litigation is governed by Federal Civil

Procedure Rule 19.  Rule 19 provides, in relevant part, that:

> A person who is subject to service of process and whose joinder will not deprive
> the court of subject-matter jurisdiction must be joined as a party if:
>
> (A)     in that person's absence, the court cannot accord complete relief
>         among existing parties; or
>
> (B)     that person claims an interest relating to the subject of the action
>         and is so situated that disposing of the action in the person's
>         absence may:
>
>         (i)     as a practical matter impair or impede the person's ability to
>                 protect the interest; or
>
>         (ii)    leave an existing party subject to a substantial risk of
>                 incurring double, multiple, or otherwise inconsistent
>                 obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).  Here, Rote asserts NDM's interest in the subject matter of his action,

and I find (following analysis of Rote's allegations in support of his claims) that litigation of

Rote's claims in NDM's absence could impair or impede NDM's ability to protect its asserted

interest (including by operation of the provision of the Lot/NDM Agreement providing that

failure to comply with the mediation requirement of Section 16.1.2 constitutes material breach of

the agreement, *see* Lot/NDM Agreement, § 16.1.3); this is sufficient to establish that NDM is a

---

(1997).

necessary party to this litigation at the first step of the three-step transfer analysis. *See* Fed. R. Civ. P. 19(a)(1)(B)(i).

In connection with the second step of the analysis, neither party has offered any argument as to whether NDM cannot feasibly be joined as a plaintiff in this litigation. In the absence of grounds on which to determine the feasibility of NDM's joinder, and in light of the fact that I have already found that Rote's action is subject to dismissal for failure to state a claim, I decline to undertake the third step of the transfer analysis, namely the determination whether NDM's absence warrants dismissal of Rote's claim.

## II.    Lot's Motion to Transfer

The sole ground Lot advances for transfer of this action to the Northern District of Georgia is the forum-selection clause of the Lot/NDM Agreement, which (as noted above) provided that "any litigation between the parties [to the Lot/NDM Agreement] arising from th[e Lot/NDM Agreement] shall take place in the state of Georgia." Lot/NDM Agreement, § 16.2. As discussed above in connection with Lot's arguments for dismissal based on Rote's failure to comply with the mediation provision of the Lot/NDM Agreement, because Rote is not a party to the Lot/NDM Agreement, he is not bound by it or by its forum-selection clause, and for that reason I disagree with Lot's argument that transfer is appropriate here. Naturally, in the event NDM were to join this action as a plaintiff or were to be substituted as a plaintiff in Rote's stead, or in the event Rote were deemed subrogated to NDM's rights under the Lot/NDM Agreement, the question whether this action should be transferred to a Georgia court under the Lot/NDM forum-selection clause would become material. In the absence of NDM as a party to this action,

Page 17 - FINDINGS AND RECOMMENDATION

however, no grounds exist for effecting the requested transfer.[7]

## CONCLUSION

For the reasons set forth above, Lot's motion (#20) should be granted to the extent it seeks dismissal of Rote's claim pursuant to Federal Civil Procedure Rule 12(b)(6) and should otherwise be denied (albeit without prejudice to Lot's right to refile in the event it becomes appropriate to do so at a later stage of these proceedings), and Rote's claim should be dismissed without prejudice. I further recommend that Rote be granted a period of thirty days within which to amend his pleading to cure the defects identified herein, and that the court enter judgment in connection with the recommended dismissal of his claim only in the event of Rote's failure to cure the deficiencies of his pleading within the specified period.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

## NOTICE

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to *de novo* consideration of the factual issues addressed herein and

---

[7] Notwithstanding the foregoing, in the event Rote were successful in amending his claim such that he could appropriately proceed on a theory of equitable subrogation, I agree with Lot that Rote would be subject to and bound by the Lot/NDM Agreement forum-selection clause.

Page 18 - FINDINGS AND RECOMMENDATION

will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge.  These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

Dated this 3rd day of March, 2017.

Honorable Paul Papak
United States Magistrate Judge

Page 19 - FINDINGS AND RECOMMENDATION